IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT LEE HARRIS, JR., :
       Plaintiff
:
vs. : CIVIL NO. 1:CV-08-2304
:
DAVID J. EBBERT, et al.,
       Defendants :

*M E M O R A N D U M*

I. *Introduction*

The pro se plaintiff, Robert Lee Harris, an inmate at FCI-Allenwood, White Deer, Pennsylvania, filed this *Bivens* action.[1] In his original complaint, he sought injunctive relief requiring the defendants to provide him with an operation for femoral nerve entrapment syndrome, which would assist him with chronic right leg weakness. Shortly after the complaint was filed, Plaintiff did have the operation.

The operation mooted the original complaint, but Plaintiff asserted he still had some claims that had not been resolved by the operation. We granted him leave to file an amended complaint. The defendants are: (1) David J. Ebbert, the prison's warden; (2) James Brady, M.D., the former clinical director; (3) Jay Miller, M.D., a medical officer; (4) Ron Laino, health services administrator; (5) Debra Spotts, assistant health services administrator; and (6) Michaeleen Powanda, a physician's assistant. They have been sued in their individual and official capacities.

In his amended complaint, Plaintiff alleges the defendants violated the Eighth Amendment by being deliberately indifferent to his need for physical therapy after

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

he complained in September 2008 to Dr. Brady about muscle weakness and atrophy in his right leg and foot. He seeks injunctive and monetary relief.

We are considering the defendants' motion to dismiss, or in the alternative, for summary judgment, which argues that there was no Eighth Amendment violation because Plaintiff has been receiving appropriate medical care after the operation, which does not have to include physical therapy.

After review of the parties' submissions, we agree with the defendants that Plaintiff has failed to establish an Eighth Amendment claim. However, since Plaintiff mistakenly believed that we had limited his amended complaint to matters occurring after the operation, we will grant him leave to file a second amended complaint raising the claim he omitted from his amended complaint.

II.     *Standard of Review*

Under Fed. R. Civ. P. 56, the moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party opposing summary judgment "may not rely solely on allegations or denials in its own pleadings . . . ." Fed. R. Civ. P. 56(e)(2). Nor may he rely on statements in briefs. *Smith v. Kyler*, 295 F. App'x 479, 481 (3d Cir. 2008)(per curiam)(nonprecedential)(quoting *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511-12 (3d Cir. 1994)). "[R]ather, [his] response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Colwell v. Rite-Aid Corp.*, 602 F.3d

495, 501 (3d Cir. 2010)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

III.     *Background*

   A.     *Plaintiff's Amended Complaint*

In pertinent part, the amended complaint alleges the following. On September 16, 2008, defendant Dr. Brady examined Plaintiff and diagnosed him with right quadricep atrophy, right hip flexor weakness and decreased dorsiflexion of the right foot. (Doc. 28, Am. Compl. ¶ 16). Plaintiff continued to complain about pain and weakness in the right leg and being forced to walk with a limp as a result of the condition of his right leg and foot. (*Id.* ¶ 17). Plaintiff was never given any physical therapy, shown how to perform rehabilitative exercises, or any educational materials on how to perform such exercises. (*Id.* ¶ 18). When Plaintiff asked the medical staff and the physician's assistants, the only answer they gave him was to consult his doctor or health-care provider, but Plaintiff had not seen his doctor since the operation. (*Id.* ¶ 19). Plaintiff was told to walk and not lift anything over twenty pounds. (*Id.* ¶ 20). One physician's assistant told him to "suck up the pain and stop complaining," (*id.*), this remark coming after Plaintiff had collapsed in his cell from the pain in his lower back, and he had to be taken to the prison hospital for a toradol injection. (*Id.*). Previously, he had been given only Motrin. (*Id.*). When Plaintiff wrote to Dr. Miller about the physician's assistants' "deliberate indifference," Dr. Miller apologized but told Plaintiff that any physical therapy would have to be done by himself. (*Id.* ¶ 21).

Plaintiff avers that "[p]hysical therapy is an important part of treatment" for patients who have had surgery or who are trying to recover from physical injuries, (*id.*, p. 3), and that it is a "mandatory aspect[ ]" of modern medicine. (*Id.*).

3

Plaintiff alleges that Dr. Brady was deliberately indifferent by not treating Plaintiff after the defendant diagnosed Plaintiff's problems with his right leg and foot, (*id.* at p. 5), nor has Plaintiff received any treatment for those conditions. Plaintiff avers that Dr. Miller; physician's assistant Powanda; health services administrator, Ronald Laino; and assistant health services administrator, Debra Scott "all have access and periodically review [Plaintiff's] medical file[,] especially during [Utilization Review] Committee meetings where they decided on . . . a course of action to treat a patient." (*Id.*).

B. *Summary Judgment Record*

We take this background from the defendants' Statement of Material Facts (SMF) and the underlying medical records the SMF cites. Plaintiff has not opposed the SMF and apparently has no serious dispute with it in any event.

Essentially, Plaintiff has had problems over the years with chronic, recurring pain in his lower back and right groin, sciatica running down his left leg, and weakness in his right leg and foot. The right leg weakness has caused him to walk in a stumbling fashion, and he has sometimes fallen down.

The medical records reveal that Plaintiff was treated over the years for these conditions, mainly by medication, sometimes over-the-counter, other times prescription. For his pain from his back and leg conditions, Plaintiff was given acetaminophen, aspirin, and Elavil. Plaintiff has also had surgery for his back and left leg pain, a decompressive lumbar laminectomy on July 31, 2008.

The nerve entrapment operation was intended to treat the right inguinal pain (right groin pain). The operation was performed on August 18, 2009, but for a substantial period of time before then physicians disagreed about whether the operation was medically indicated. The disagreement arose from a hernia operation Plaintiff had in October 2002 while he was at another prison.

4

In January 2008, a general surgeon requested an MRI of the back and right groin, suspecting excessive fibrosis in the groin area. The surgeon also requested a consult with a neurosurgeon. (Doc. 36-2, CM/ECF p. 31). In March 2008, the MRI was done, showing degenerative disc changes in the lumbar spine but nothing abnormal in the soft tissue structure of the hips. (Doc. 36-3, CM/ECF pp. 3-4). In May 2008, a neurosurgeon opined that the right inguinal pain was related to the hernia operation and was inguinal nerve entrapment syndrome. (*Id.*, p. 15). On June 3, 2008, a general surgeon thought it did not relate to the hernia operation, that Plaintiff's problems were neurological. (*Id.*, p. 21 ).

Shortly before then, on May 21, 2008, Plaintiff had complained about his low back pain and right groin pain, stating that it had been going on for the past six years. He was prescribed Elavil for this pain, in addition to the aspirin and Tylenol already prescribed. (*Id.*, pp. 18-19). On June 18, 2008, Plaintiff reported the Elavil was helping him sleep. (*Id.*, p. 23).

Plaintiff continued to complain about right leg pain. On August 9, 2008, it was noted that his treatment plan for the pain was Tylenol and Elavil (although he was apparently not taking the Elavil anymore as he believed it was not working). Plaintiff was also receiving toradol injections in relation to his recent (July 31, 2008) back surgery, and he was given a walker to use in relation to his right leg and foot problems. He was also encouraged to keep walking so as not to compromise his back surgery. Defendant Powanda noted at this time that Plaintiff had "already been seen by the general surgeon in regards to his right leg complaint who indicated that there are no surgical interventions at this point." (*Id.*, p. 39). She indicated he would be referred "to the MD for further evaluation." (*Id.*).

On August 14, 2008, Plaintiff was cleared to return to work (sitting at a computer) and was told not to lift more than twenty pounds. It was noted that he was walking a lot. His Elavil was increased and his Motrin continued. (*Id.*, p. 44).

On September 9, 2008, the URC discussed Plaintiff's chronic right groin pain.[2] It was noted that the general surgeon did not consider it a surgical issue and that the neurosurgeon did. It was decided that his condition "should be managed with pain control," noting that Plaintiff was prescribed Elavil and Tylenol, and that he did not meet the criteria for a BOP medical center." (*Id.*, p. 50).

On September 16, 2008, Plaintiff was seen by defendant Dr. Brady. At that time, Dr. Brady decided to consult further with a neurologist but doubted that Plaintiff's right leg and foot problems were related to the 2002 hernia repair. He anticipated a "recovery" that was "likely to be slow and incomplete." (Doc. 36-4, CM/ECF p. 3).

About six weeks later, on October 30, 2008, Plaintiff saw Powanda again as a follow-up "per Dr. Brady," when he again complained about his right leg problems and that they were getting worse, although his back pain had improved. This time defendant Dr. Miller requested a consultation with a neurosurgeon. (*Id.*, pp. 6-7). On December 11, 2008, the same neurosurgeon again related the right inguinal pain to the hernia operation and recommended Plaintiff be seen by a general surgeon. He also offered to discuss the case with any general surgeon. (*Id.*, p. 24).

On February 3, 2009, Plaintiff was seen by a general surgeon for complaints of pain in the lower back and groin. The surgeon recommended the use of nonsteroidal anti-inflammatory drugs, heat and light exercise. The surgeon saw no

---

[2] The URC is the Utilization Review Committee, which reviews prisoner medical cases to determine if particular care is needed, including outside medical and surgical care and consultations with specialists. (Doc. 40-2, CM/ECF p. 16).

6

surgical reason for the weakness and recommended an MRI of the lower back with a neurological follow-up.  (*Id.*, p. 23).

On February 10, 2009, Dr. Miller discussed the case with the neurosurgeon, who again opined that Plaintiff's "problems are from his inguinal region," and said he would be willing to see Plaintiff after an MRI but did not believe a neurologist would add much.  (*Id.*, p. 25).  He also agreed they were "going around in circles."  (*Id.*).  The MRI (of the lumbar spine) was done on February 25, 2009.  On February 26, 2009, Plaintiff was seen by defendant Powanda, stating his complaints of right groin and right leg pain, that the pain is unchanged from prior visits, and that he has been "referred back and forth between the general surgeon and the neurosurgeon."  (*Id.*, p. 31).

On April 13, 2009, about seven weeks later, Plaintiff was referred for a consult with the neurosurgeon for evaluation of the "recent MRI," showing lumbar spondylosis.  (*Id.*, p. 38).  On May 7, 2009, the neurosurgeon evaluated Plaintiff and the MRI and still opined that the right groin pain and other right leg problems were being caused by femoral nerve entrapment in the groin following the 2002 hernia operation.  He recommended "a second general surgery opinion regarding right groin exploration."  (*Id.*, p. 41).  On May 12, 2009, defendant Powanda noted the neurosurgeon's opinion in Plaintiff's prison medical records and that a "consult [was] written for second general surgery second opinion pending URC."  (Doc. 36-5, p. 7).  On June 1, 2009, Plaintiff agreed to a trial of valproic acid to treat his pain, but on June 3 declined out of fear of the side effects on his kidneys.  (*Id.*, pp. 11, 13).

On June 19, 2009, another general surgeon opined that there did appear to be some scar tissue and possible entrapment in the right groin where Plaintiff had had the hernia repair, resulting in pain that is difficult to treat.  This surgeon advised Plaintiff of the risk of the "complicated surgery" to repair the nerve entrapment that might result "in

7

major neurovascular injury." (Doc. 36-4, p. 48). Plaintiff decided on the surgery and underwent the operation on August 18, 2009.

Plaintiff's prison medical records after the operation do not reveal that the surgeon ordered any physical therapy or rehabilitative exercises. (Doc. 36-4, Hospital Discharge/Instruction Sheet, CM/ECF p. 50). The records do indicate that on November 6, 2009, Plaintiff requested instructions on the kinds of exercises he could do to strengthen the muscles in his right leg. (Doc. 36-5, CM/ECF p. 37). The nurse noted on the record she would consult with the surgeon on the exercises he could perform. (*Id.*, p. 38).

On December 2, 2009, Plaintiff reported "intermittent lower back muscle stiffness" and that "sometimes" his right leg "'locks up.'" (Doc. 36-5, CM/ECF p. 39). On December 4, 2009, Plaintiff had follow-up care with the outside surgeon who noted that his pain had improved and that he was "regaining muscular strength albeit slowly." The surgeon noted that the "assessment/plan" was "improvement in muscle strength and mobility of the right lower extremity . . . ." (*Id.*, p. 53).

On December 7, 2009, Harris was seen at chronic care clinic where he continued to complain of lower back pain, which radiates to his left thigh. He was taking acetaminophen, with some relief of symptoms. (*Id.*, p. 42).

On December 21, 2009, Harris was seen by institution medical staff for post-surgical follow-up care when Harris reported that aside from "muscle aches," he felt "ok." (*Id.*, p. 46). Harris was told he could "do standard lower extremity exercises, including extensions, toe raises, and walking." (*Id.*).

On January 8, 2010, the URC approved a request Plaintiff made for physical therapy with an in-house consultant. (Doc. 38, CM/ECF p. 4). Defendant Laino, the prison's health services administrator, affirmed that Plaintiff was approved for a one-

8

time visit with a physical therapist because the URC believed he could benefit from instructions "on exercises he can perform by himself to strengthen his right quadricep femoris muscle and right foot drop." (Doc. 40-2, Laino Decl. ¶ 8). Laino affirmed that Plaintiff was not offered physical therapy before "because FCC Allenwood did not and still does not have a physical therapy program available." (*Id.* ¶ 9). However, the prison anticipates, beginning in April 2010, hiring a physical therapist to come to the prison and instruct inmates who medically qualify on exercises they can perform. (*Id.* ¶¶ 10 and 12).

IV.     *Discussion*

In moving for summary judgment, the defendants first argue they cannot be sued in their official capacities because such a suit is really one against the United States and is barred by sovereign immunity. We agree. *See Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008)(per curiam)(nonprecedential) (dismissing the plaintiff's Eighth Amendment medical claim against the defendants in their official capacities, observing that "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver"). We will therefore enter judgment in favor of the defendants and against Plaintiff on Plaintiff's claim against them in their official capacities.

The defendants next argue that Plaintiff has failed to allege that any of them have the necessary personal involvement to impose civil-rights liability on them. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(personal involvement in the alleged wrongs is necessary for the imposition of liability in a civil rights action). We agree with this argument in regard to Warden Ebbert, who has not been shown (or even alleged) to have been involved in any way with Plaintiff's Eighth Amendment claim. We need not

9

address this argument as it relates to the other defendants since we agree with them, as shown below, that they did not violate Plaintiff's Eighth Amendment rights.

The Eighth Amendment "requires prison officials to provide basic medical treatment to" inmates. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)(*citing Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Id.* (*quoting Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993)). In the context of prison medical care, in order to state a cognizable claim for the denial of medical treatment, the plaintiff must prove that (1) he had a serious medical need, and (2) that the defendants were deliberately indifferent to that need. *Id.*

Deliberate indifference requires "obduracy and wantonness," "a recklessness or conscious disregard of a serious risk" to the prisoner. *Rouse, supra*, 182 F.3d at 197 (quoted cases omitted). It follows that medical malpractice, as serious as it is, does not state an Eighth Amendment claim. *Id.* Nor is there an Eighth Amendment violation when a prisoner simply disagrees with a prison doctor's course of treatment. *Young v. Quinlan*, 960 F.2d 351, 358 n.18 (3d Cir. 1992).

The claim in the second amended complaint is that the defendants violated the Eighth Amendment by being deliberately indifferent to Plaintiff's need for physical therapy after he complained in September 2008 to Dr. Brady about muscle weakness and atrophy in his right leg and foot. In moving for summary judgment, the defendants argue that Plaintiff's claim lacks merit because physical therapy was not ordered after Plaintiff's August 2009 nerve entrapment surgery nor was it ever medically indicated.

We agree with the defendants. Certainly, there is no evidence that a doctor ordered physical therapy after the nerve entrapment operation so there can not be an

10

Eighth Amendment claim for failing to provide such therapy after the operation. Plaintiff points to the January 2010 decision to authorize physical therapy for him as proof that it was medically necessary, yet withheld from him. However, as defendant Laino affirms, this was approval for a one-time visit with a physical therapist on the belief that Plaintiff could benefit from instructions on exercises he could perform by himself to strengthen his right quadricep femoris muscle and right foot drop. Authorizing such a visit does not mean it was medically necessary.

The defendants concentrate on the period of time after the August 2009 operation, but Plaintiff's claim is larger than that, alleging that he failed to receive physical therapy beginning September 16, 2008, the day he saw Dr. Brady who noted at that time the right quadricep atrophy, right hip flexor weakness and decreased dorsiflexion of the right foot. Nonetheless, Plaintiff fails to establish an Eighth Amendment claim because no physician indicated that physical therapy was medically necessary during this broader time period either. Moreover, in his opposition brief, Plaintiff makes clear that his argument for physical therapy is based solely on his own belief that such therapy is standard medical practice. See doc. 38, Opp'n Br. at p. 2 ("To deny the plaintiff or any patient physical therapy would be deliberate indifference because it would go against the grain of modern medical science, and the standards of modern medical treatment.") However, there is no Eighth Amendment violation when a prisoner simply disagrees with a course of treatment.

Further, we must agree with the defendants that the medical records show that medical personnel were treating Plaintiff's conditions and attempting to ameliorate his complaints of pain with various prescription and nonprescription drugs. Any delay in treatment for the right groin pain and attendant leg problems arose from a disagreement

between physician's as to the cause of the pain. There was thus no deliberate indifference here.[3]

We will enter summary judgment in favor of the defendants on the Eighth Amendment claim presented in the amended complaint.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 2, 2010

---

[3] Plaintiff complains in a letter dated February 20, 2010, (doc. 39) that we limited him to the time frame he set forth in his amended complaint when we required the amended complaint to be a new pleading that stood on its own "without reference to the complaint already filed." (Doc. 27, memorandum of November 10, 2009, CM/ECF p. 3). Our order requiring Plaintiff to file an entirely new complaint was procedural only; it said nothing about limiting the claims Plaintiff could make. (In fact, we described Plaintiff's "new claim," which he was free to present in his amended complaint, as one originating with the hernia operation.) Instead, Plaintiff limited his claim to a failure to provide physical therapy beginning on September 16, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT LEE HARRIS, JR., :
    Plaintiff
     :

    vs. : CIVIL NO. 1:CV-08-2304

     :
DAVID J. EBBERT, et al.,
    Defendants :

*O R D E R*

AND NOW, this 2nd day of July, 2010, it is ordered that:

1. The defendants' motion (doc. 34) for summary judgment is granted.

2. The Clerk of Court shall enter judgment in favor of the defendants and against plaintiff and close this file.

        /s/William W. Caldwell
        William W. Caldwell
        United States District Judge